## WESTON v. ESTEY.

**1. PLEADING.**

The plaintiff in an action to quiet title need only aver his possession and title, legal or equitable, coupled with a statement that the defendant claims an estate in the premises adverse to him.

**2. SAME.**

To constitute a defense to an action to quiet title, the defendant must set up some adverse claim to or interest in the property and the nature of the claim.

**3. SAME.**

Each defense must be complete in itself.

**4. EVIDENCE—CONTEMPORANEOUS WRITINGS.**

Different writings relating to the same subject, executed at the same time and between the same parties, are to be considered as parts of the same instrument.

**5. CORPORATIONS—ULTRA VIRES.**

A bank corporation organized under the statute is without power to engage in mining business or to enter into a contract requiring it so to do.

*Appeal from the District Court of Lake County.*

THIS is one of a number of suits that arose out of the failure of the Bank of Leadville in 1883. It was instituted in the court below by appellee, Robert B. Estey, as plaintiff. Jacob T. Long, John W. Long, Cody W. Derry, George W. Trimble, and appellant A. S. Weston were made defendants.

The Longs and Derry, during the time the Bank of Leadville was doing business, negotiated a loan from the bank for the sum of fifty thousand (50,000) dollars, securing the same by deed of trust upon certain mining property, which is the subject of this suit. Not being able to pay this loan when due, these defendants deeded the property to George R. Fisher, the trustee named in the deed of trust, he being at the time cashier of the Bank of Leadville. Cotemporaneously with the execution of this deed, Fisher executed a release deed of trust, and the parties also entered into the following written agreement:

"This agreement, made and entered into this 9th day of October, A. D. 1882, between Geo. R. Fisher, party of the first part, and Jacob T. Long, John W. Long and C. W. Derry, parties of the second part.

"Witnesseth: That, whereas, the parties of the second part have this day conveyed to the party of the first part the following described mining property, namely: Those certain lodes, ledges, deposits and mining claims situated on Long and Derry hill, in California mining district, in the county of Lake, and state of Colorado, known as, and called, the Long and Derry mines, and consisting of the 'Faint Hope' lode and mining claim; the 'Dana' lode and mining claim; the 'Porphyry' lode and mining claim; the 'Plattner' lode and mining claim; the 'Triangle' lode and mining claim; the 'Strip' lode and mining claim; the 'Mary Jane' lode and mining claim, and the 'Mary Ann' lode and mining claim; for a more specific description of which, reference is hereby made to the respective patents of the first five above-named mines, and to the location certificates of the last two above-named mines, recorded in the records of the county of Lake, aforesaid.

" And whereas, said conveyance has been made, as aforesaid, upon the following conditions, namely:

" 1st. Upon the payment, cash in hand, by the party of the first part, to the parties of the second part, of the sum of sixty thousand dollars ($60,000.00).

" 2nd. In consideration of said conveyance the party of the first part has agreed and does hereby agree, to take immediate possession of said mining property and work the same to the best advantage, and in mining-like and workman-like manner, having due regard to the protection of said mining property, and of the interests of the party of the first part as well as the parties of the second part; that he will keep fair and correct accounts of all expenses necessarily incurred in working said property and in making sale of the ore to be mined therefrom; that he will sell the ore taken from said mining property to the best advantage according to his best skill and judgment.

" It is further agreed and understood between the parties hereto, that the parties of the second part or their duly authorized agent or attorney may at all reasonable times, especially at the end of each and every month, have free access and full privilege of examining and ascertaining from the books kept by the party of the first part the results of said mining operations, of [and] ascertaining therefrom whether any profit has been made, and if so, the amount thereof, and said parties of the second part shall have the privilege, in like manner, by themselves or their agent or attorney, to at all times examine said mining property, to ascertain whether the same is properly worked.

" And it is further agreed, that one-half of the net profits to be derived and made from the working of said mines may be held and retained by the party of the first part, and the other half thereof may also be retained by the party of the first part, to apply as a repayment of said sum of sixty thousand dollars ($60,000.00), together with the interest thereon at the rate of ten (10) per cent. per annum until the whole

amount of said sum and the interest thereon shall have been fully paid.

" And it is further agreed by and between the parties hereto, that one-half of the profits derived and made from the working of the said mining property, in excess of said sum of sixty thousand dollars ($60,000.00), and the interest thereon, as aforesaid, shall be paid over to the parties of the second part until the sum paid over to them reach and equal the sum of forty thousand dollars ($40,000.00).

" It is further agreed by and between the parties hereto, that if at any time the party of the first part shall see fit to sell said property to any part thereof, that then, and in such case, the sum of sixty thousand dollars ($60,000.00), together with the interest thereon, as aforesaid, shall first be deducted from the purchase price of the sale of said property, provided, nevertheless, that if any sum of money shall have been applied or ought to have been applied to the payment of said sum out of the proceeds of said mining property, prior to the date of such sale, that such sum shall be deducted from said sum of sixty thousand dollars ($60,000.00), and the interest thereon, and the balance only be deducted from the purchase price of said mining property, and that the balance of the purchase price of said property shall then be equally divided between the party of the first part and the parties of the second part, but if such surplus be so large that in such division the parties of the second part would receive more than the sum of forty thousand dollars ($40,000.00), then and in such case, it is expressly agreed and understood, that the parties of the second part shall receive out of such surplus only the sum of forty thousand dollars ($40,000.00), and the party of the first part may retain all of the remainder and remaining part of such surplus.

" And it is further agreed by and between the parties hereto, that if at any time before the sale and conveyance of said property by the party of the first part, the parties of the second part shall produce a purchaser ready and willing to purchase said property and pay for the same, and shall tender

the payment of the balance due upon said sum of sixty thousand dollars ($60,000.00), and the interest thereon, as provided herein, and also the further sum of eighty thousand dollars ($80,000.00), then and in such case, said party of the first part does covenant and agree for himself, his heirs, executors, administrators and assigns, to and with the parties of the second part, their heirs, executors, administrators and assigns, that he will make, execute and deliver to the said purchaser a good and sufficient conveyance of said premises.

" And it is further agreed by and between the parties hereto, that in case of the sale last aforesaid, that the said eighty thousand dollars ($80,000.00) shall be equally divided between the party of the first part and the parties of the second part.

" It is further agreed and expressly understood by and between the parties hereto, that the parties of the second part shall leave upon said premises all tools and implements of every kind now used in mining said property, and shall also leave upon said premises for the use of said mines all mining timbers and wood now being upon said premises.

" It is further agreed by and between the parties hereto, that the parties of the second part, their agent or attorney, shall have the right to examine the books of the smelters and ore buyers where any of the ore mined from said mining claims shall have been sold, and shall have the right to demand and receive from said smelters and ore buyers, from time to time, statements of the amount of ore received from said mines and the value thereof."

It is alleged in the complaint that no money was paid by the defendants to Fisher, or to the bank upon this transaction at the time of this written agreement, or at any other time, although Fisher, without authority, surrendered to the Longs and Derry their note given to the bank; that at the time of the release of the trust deed, and the surrender of the promissory note secured thereby, and the making of said conveyance, and the execution of the contract, the defendants, the Longs and Derry, had full notice and complete

knowledge; that the money which they had borrowed, and which constituted the only consideration for the conveyance and contract in writing, and constituted the sole considera-tion for the release of the trust deed and surrender of the promissory note as aforesaid, was borrowed from and be-longed to the Bank of Leadville; that the Bank of Leadville was then and there a banking corporation, organized and existing by virtue of the laws of the state of Colorado, and was without the power to perform the conditions of the writ-ten contract, or in any manner to enter into mining opera-tions or speculations. It is further alleged that Fisher had no authority to in any manner bind the bank to the perform-ance of such a contract; that he was entirely without au-thority in the premises, save and except such as was incidental to his office of cashier of the bank, or as trustee in the deed of trust; that all of said acts of Fisher in the premises were in violation of his duties as such trustee and a fraud upon the bank.

The failure of the bank is averred and the appointment of one Joseph H. Playter as receiver. It is further alleged that, in pursuance of the orders of the district court made in the premises, Playter, the receiver, did proceed to sell, and did sell, all the indebtedness of said defendants, Jacob T. Long, John W. Long and Cody W. Derry to said insolvent bank, together with all securities of every kind and nature what-soever, including the interest of the bank in the premises, note of the Longs and Derry and the trust deed given as security therefor, to the plaintiff Estey for the sum of twelve thousand (12,000) dollars, then and there paid by him. Plaintiff asks that the release given by Fisher of the deed of trust be set aside; that the deed of the property from defend-ants, the Longs and Derry, together with the written con-tract mentioned, be set aside and held for naught, and that a trustee be appointed for the sale of the property under the original trust deed to satisfy plaintiff's demands.

The defendants, the Longs and Derry, made default. The only allegation of the complaint connecting Weston with the

transaction is one to the effect that the defendant Weston claims some interest in, lien upon, or title to the property in controversy, the plaintiff averring that whatever in fact such interest may be, it is inferior and junior and subject to the rights and equity of the plaintiff, as aforesaid.

Of the defendants, Weston alone answered. His title to this property is based upon a judgment for four thousand seven hundred and thirty-one (4,731) dollars and costs, obtained by him against the Bank of Leadville on the 25th day of July, 1889. Upon this judgment an execution was issued and levied upon all the right, title and interest of the Bank of Leadville to the mining property mentioned and described in the complaint. After proper advertisement, all the right, title and interest of the bank in this property was sold by the sheriff to Weston, and after the expiration of the time when a redemption could be lawfully claimed, and no such redemption having been made by the defendant or any judgment creditor, the sheriff of Lake county made, executed, acknowledged and delivered to Weston a sheriff's deed to all the property. Other matters interposed as a defense are sufficiently set forth in the opinion of the court.

To this answer the plaintiff demurred, and the court having sustained the demurrer, and the defendant electing to stand by his answer, judgment was rendered for plaintiff. To reverse this judgment the case is brought here by appeal.

Mr. A. S. WESTON, for appellant.

Mr. A. S. BLAKE, Mr. J. W. TAYLOR and Mr. CLINTON REED, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

This action was commenced by defendant in error, as plaintiff below, for the purpose of removing a cloud from the title to certain real estate, situate in Lake county, Colorado, and to obtain a decree of foreclosure of a deed of trust thereon.

Plaintiff sets up his title to the property in controversy, alleges possession, and sets forth by specific allegations the nature of the interest claimed by the defendants, Jacob T. Long, John W. Long, Cody W. Derry and George W. Trimble. The only averment connecting the defendant Weston with the transactions set forth, or with the property, is the statement that he claims an estate in the property adverse to plaintiff. The defendants, the Longs and Derry, made default, Weston alone appearing and answering.

In an action to remove a cloud upon a title, it is only necessary for the plaintiff to aver his possession and title, legal or equitable, coupled with a statement that the defendant claims an estate therein adverse to him. This is followed in this case by an averment that such interest, etc., is inferior, junior and subject to plaintiff's rights and equities. To constitute a defense to the action, the defendant must set up some adverse claim to or interest in the property and the nature of such claim. *Wall v. Magnes,* 17 Colo. 476; *Amter v. Conlon, ante,* p. 150.

The answer contains seven separate defenses to the plaintiff's cause of action. These defenses might all be disposed of upon the rule that, to be available, each defense must be complete in itself, and a full answer to the cause of action to which it is interposed. Bliss on Code Pleading (3d ed.), sec. 346; Pomeroy's Remedies & Remedial Rights, secs. 716 to 719; *Travelers' Ins. Co. v. Redfield,* 6 Colo. App. 190.

The first, second, fifth and sixth defenses contain no averment of any interest of defendant in the property whatever, while in the third he admits that he claims an interest in the property, but fails to set forth the nature of such interest. The fourth defense contains no denial of any of the averments of the complaint. It is apparent from this statement that the first six defenses interposed are insufficient to constitute any defense to the plaintiff's action.

This leaves for our consideration only defense No. 7, which the defendant calls a cross complaint. This pleading admits every material allegation of the complaint, and sets up a

suit, by attachment, instituted by Weston against the Bank of Leadville. It alleges that in such suit judgment was rendered in favor of plaintiff for the sum of four thousand eight hundred and thirty-seven dollars and twenty-seven cents (4,837.27); that an attachment was issued in aid of the suit and levied upon the property in controversy; that afterwards an execution was duly issued and levied, and the property sold therein as the property of the Bank of Leadville and purchased by Weston, who subsequently obtained a sheriff's deed therefor, but these averments show that whatever title the defendant Weston acquired by virtue of these proceedings was subsequent in point of time and junior to the inception of the title claimed by the plaintiff. It is therefore apparent that the defendant Weston's pleading contains no defense to the cause of action stated in plaintiff's complaint.

We might properly rest the decision of this case here, but as we are satisfied by an examination of the pleadings that the defendant has no standing upon the merits of the controversy, it will perhaps be more satisfactory to determine the case upon its merits. It is admitted by these pleadings that at the time of the execution of the deed of trust set forth in the complaint by the Longs and Derry to George R. Fisher, the former were indebted to the Bank of Leadville in the sum of fifty thousand (50,000) dollars, and that on the 28th day of April, 1882, they executed their promissory note for that sum, with interest at two per cent per month; that said note was payable four months after the date thereof and secured by this deed of trust, executed by the Longs and Derry upon this property to George R. Fisher, he being at the time cashier of the bank. It further appears that in the month of October, 1882, Fisher, the trustee named in the deed of trust, without the payment of any money to him or to the bank, without the request of the bank, and without power and authority in the premises, released the deed of trust of record, by executing to the Longs and Derry a trustee's release.

As a part of this same transaction, two other papers were executed between the parties at the same time, one being a deed of conveyance by the owners of the property, the Longs and Derry, to Fisher, and the other being an agreement by Fisher to enter upon the property and mine the precious metals therefrom until such time as that one half of the net profits realized therefrom should amount to the sum of forty thousand (40,000) dollars, in addition to the indebtedness due the bank, which at that time was sixty thousand (60,000) dollars. Fisher was to continue to work the property, unless a sale could in the meantime be effected, until he could repay himself from the profits thereof the sum of sixty thousand (60,000) dollars, and interest thereon at the rate of ten (10) per cent per annum, and thereafter until the further sum of forty thousand (40,000) dollars could be realized therefrom for the Longs and Derry. Upon the payment of these several amounts, the mining property, together with one half of the net profits resulting from such working, should belong to and become the absolute property of the said Fisher, the trustee. There are certain other conditions of this agreement, such as the right reserved therein to Fisher and to the Longs and Derry to sell the property, under certain specified conditions, which are immaterial in this connection.

Where different writings relating to the same subject are executed at the same time between the same parties, a fundamental principle of construction requires that they be treated as one and the same instrument. *Strong v. Barnes*, 34 Am. Dec. 684; *Norton v. Kearney et al.*, 10 Wis. 443.

Bearing in mind this rule, it is apparent that although Fisher, as the result of his unauthorized conduct, acquired the naked legal title to this property by virtue of the deed to him from the Longs and Derry, the equitable title remained in the grantors, which equitable title, by the express contract of the parties, was only to be divested upon the happening of certain contingencies, which never took place.

The defendant Weston claims title to this property, as we have seen, as the result of his attachment proceedings against

the Bank of Leadville, but as the Bank of Leadville never held title to this property, but at best had a mere security thereon, we are unable to see how the defendant Weston obtained any title by reason of his suit against the bank. He cannot rely upon the claim that Fisher, in taking this title, was acting for an undisclosed principal, to wit, the bank, for two reasons: First, because of the rule of law which requires the principal to adopt a contract in its entirety, if at all, which in this case would require the bank to adopt the agreement made by Fisher with the Longs and Derry, whereby he (Fisher) agreed to go into the mining business and work this property. It requires no argument to show that it is beyond the power of the bank to enter into a contract of this nature. If banking institutions in this country were permitted to enter into the hazardous business of mining, there would be very little security for depositors. Mills' An. Stats., sec. 510; Morawetz on Private Corporations, sec. 316; *Thomas v. Railroad Co.*, 101 U. S. 71; *Taymouth v. Koehler*, 35 Mich. 22; *Bray v. Farwell*, 81 N. Y. 600; *Head v. The Providence Ins. Co.*, 2 Cranch, 127.

The position of Weston is untenable for another conclusive reason, and that is Fisher was only to have title to this property upon the happening of certain contingencies, or the performance of certain conditions. These contingencies never transpired and the conditions have never been performed. Fisher's title, therefore, never became absolute under his deed, and if it were possible to substitute the bank as his undisclosed principal, the title of the bank would be no better than his, and for this reason the merits of the controversy are with the plaintiff, and the decree of the court below should be affirmed.

*Affirmed.*