DORR COUNTY STATE BANK, a Banking Corporation, Respondent, v. JOHN W. ADAMS, Appellant.

(199 N. W. 941.)

**Banks and banking — judgment — pleading.**

In an action on two promissory notes it is *held*, for reasons stated in the opinion:

(1) That the note described in plaintiff's first cause of action was not merged in a judgment rendered in Wisconsin (foreclosing a certain land contract) so as to preclude suit on the note in this state.

(2) That an alleged agreement between the plaintiff and defendant by the terms of which the plaintiff agreed that it "would supervise the operation of defendant's farm in Wisconsin, determine the crops to be put in from year to year, the manner and method of cultivating and cropping the same and of disposing of said crops, and, in general, would see that said farm as operated in good and husbandlike manner: that plaintiff would look after and supervise the use and care of all of the personal property of the defendant on said farm, consisting of horses, cattle, poultry, farm tools and machinery, and other personal property, and would notify defendant of any proceeding or contingency whereby the said property . . . might be disposed of, sold or taken from their possession, and would, in case of such proceeding or contingency, protect the property and interests of the defendant to the best of its ability," is presumptively ultra vires and that the trial court was correct in holding that a counterclaim claiming damages for the breach of such alleged contract did not state facts sufficient to constitute a counterclaim.

(3) Where a demurrer to an answer, purporting to set forth a defense and counterclaim, is sustained, with leave to the defendant to plead over; and defendant serves an amended answer setting forth the same purported defense

and counterclaim, which he attempted to set forth in the former answer; and plaintiff interposes a demurrer to such amended answer, which demurrer is sustained: and defendant makes no request for leave to plead over and there is no showing whatever that there are any facts which may be pleaded by the defendant other than those already pleaded, the trial court did not err in not granting defendant leave to plead over.

Opinion filed July 25, 1924.

Banks and Banking, 7 C. J. § 213 p. 586 n. 91; § 221 p. 588 n. 21; § 223 p. 589 n. 32. Judgments, 34 C. J. § 1265 p. 854 n. 30. Pleading, 31 Cyc. p. 357 n. 98.

Appeal from the District Court of Cass County, *Cole, J.*

Defendant appeals from an order sustaining a demurrer to the answer.

Affirmed.

*A. R. Bergeson* and *Conmy, Young & Burnett,* for appellant.

"Where the cause of action is a promissory note as an evidence of debt, it is considered merged in the judgment." 15 R. C. L. p. 787, note 6 and cases cited.

The most important effect of the merger of a cause of action in a judgment is that after the merger, the judgment is the evidence of the debt, and a proceeding in reference thereto should be founded on the judgment, for after a cause of action has been merged in a judgment, it cannot be made the basis of a subsequent action or judgment. 15 R. C. L. 792, notes 12, 13.

"Under the Constitution and laws of the United States requiring the judgment of one state to be given the same credit in another state as it has by law or usage in the courts of the state where rendered, it is now well settled that a judgment which merges a cause of action in the state wherein it was rendered has a like effect elsewhere, and therefore a judgment of a court in any state is a merger of the cause of action in every other state in the Union." 15 R. C. L. 790, notes 17, 18.

The term "transaction" is not legal and technical, it is common and colloquial; it is therefore to be construed according to the context and to approve usage. As so construed, it is broader than "contract" and

broader than "tort" although it may include either or both, it is "that combination of acts and events, circumstances and defaults, which, viewed in one aspect, results in the plaintiff's right of action, and viewed in another, results in the defendant's right of action." Pom. Code Rem. ¶ 774 and it applies to "any dealings between the parties resulting in wrongs, without regard to whether the wrong be done by violence, neglect, or breach of contract" (citing authorities).

Corporations, in the absence of express restrictions, have the implied power to do all acts that may be necessary to enable them to exercise the powers expressly conferred, and accompany the objects for which they were created. 14a C. J. p. 252, note 11, citing authorities from practically every state in the Union, including Wisconsin.

And where an express power is granted to do a particular act, this carries with it by implication the right to do any act, not prohibited, which may be found reasonably necessary to give effect to the power expressly granted. 14a C. J. p. 254.

Where a contract is ultra vires, not because the corporation may not make it under any circumstances, but by reason of the particular circumstances, under which it is made, then it is never void, and the plea of ultra vires cannot be made by either party after the contract has been executed by the other party.

*J. E. Hendrickson,* for respondent.

As a general rule under a statute allowing a counterclaim on a cause of action arising out of the same transaction set forth in the complaint or connected with the subject-matter of the action, damages for a tort cannot be set up in an action for a tort as a counterclaim or set-off. 24 R. C. L. 827.

CHRISTIANSON, J. This is an appeal from an order sustaining a demurrer to defendant's answer and counterclaim. The action was brought to recover on two promissory notes executed and delivered by the defendant and payable to the order of the plaintiff. The notes are in the respective sums of $141.32 and $775, and bear date March 29th, 1920. The answer admits the corporate existence of the plaintiff, and the execution and delivery of the notes. In further answer to the cause of action based upon the first note the defendant alleges that in 1915 the defendant entered into a contract with one Peterson, the president

of the plaintiff bank, for the purchase of certain land in Dorr county, Wisconsin, and agreed to pay therefor the sum of $4,500; that defendant paid $1,200 in cash at the time of the execution of the contract and agreed to pay the balance of said $4,500, according to the terms and conditions of certain promissory notes; that the note sued upon in plaintiff's first cause of action was executed and delivered by the defendant on March 29th, 1920, as and for the full payment of interest then due upon the various notes given for the purchase of said land; that on or about June 11th, 1920, an action was brought against the defendant and others in the circuit court of Dorr county, Wisconsin, for the foreclosure of said land contract; that the complaint in said action, set forth among others, the note sued upon in this action; that on or about September 14th, 1920, judgment was entered in said cause "decreeing that defendant was in default in the payment of the sum due on the said contract and further decreeing that unless the same was paid on or before the 14th day of October, 1920, the said defendant John W. Adams, should be forever barred and foreclosed of all right, title and interest in and to the lands purchased under the terms of said contract; that said property was not redeemed by the defendant or any parties to said contract," and that by virtue of said judgment the said note in the sum of $141.32 was paid and satisfied in full. In answer and by way of counterclaim to the second cause of action the plaintiff alleges that in the fall of 1915 the defendant purchased a certain farm from the president of the plaintiff bank and that at plaintiff's solicitation the defendant borrowed on his notes from the plaintiff bank approximately $1,000 with which to equip said farm with horses, cattle and machinery; that in the fall of 1916 the defendant moved to North Dakota where he has since resided; that at the time defendant moved to North Dakota he was indebted to the plaintiff bank in the sum of several hundred dollars; that the plaintiff held no security for such indebtedness, and that at that time it seemed to the best interest of both parties that plaintiff should supervise and control the management of said farm "as defendant would thereby leave the farm in the hands of an established banking institution which was interested in realizing on an indebtedness of the defendant, and plaintiff thereby would also be in better position to realize on the same; that in consideration of such mutual interests and benefits to be derived there-

from by both parties, the plaintiff and defendant at said times entered into oral contract and agreement as follows:   That defendant would leave the management·of said farm in the hands of the plaintiff; that plaintiff.would supervise the running of the said farm, determine the crops to be put in from year to year, the manner and method of cultivating and cropping the same and of disposing of said crops, and, in general, would see that said farm was operated in good and husband-like manner; that plaintiff would look after and supervise the use and care of all of the personal property of the defendant on said farm, consisting of horses, cattle, poultry, farm tools and machinery, and other personal property, and would notify defendant of any proceeding or contingency whereby, the said property, either real or personal, or both, might be disposed of, sold or taken from their possession, and would, in case of such proceeding or contingency, protect the property and interests of the defendant to the best of its ability; and, in fact, would look after all of defendant's said property, real and personal, in an efficient, faithful and husbandlike manner.   That it was further mutually agreed that in consideration of such services plaintiff should take the net proceeds derived from the running and cultivation of said farm from year to year and apply the same on the indebtedness of the defendant to the plaintiff."   That on or about September 27th, 1917, unbeknown to the defendant, who was then in North Dakota, a suit for a small lumber bill was brought in a regularly constituted court·of the State of Wisconsin; and that on or about September 29th, 1917, judgment was rendered in the sum of $153.74, in favor of the plaintiff in said suit and against the defendant, John W. Adams; that thereafter on or about October 4th, 1917, execution was issued upon said judgment and a levy made thereunder on·defendant's personal property located and situated on said farm; that notice of such levy was given to the plaintiff herein as agent for the defendant in sufficient time before the sale for plaintiff to have protected defendant's interest in said property; that plaintiff utterly failed and neglected to notify the defendant of such levy before the time for sale or in any way to protect his interest and wholly failed to live up to the terms and requirements of above named contract on his part; that the property was duly sold on execution sale on or about November 15th, 1917, for the sum of $153.74; that the property so sold was reasonably worth the

sum of $1,200; that had plaintiff notified the defendant of such levy the defendant was in position to and would have paid the judgment and would have thereby saved and protected his property before the sale thereof; and that because of plaintiff's failure to notify plaintiff of such levy and sale or to do anything to protect his interest in said property on or before the time of sale, and because of plaintiff's breach of the above contract, defendant has been damaged in the sum of $1,046.26."

(1) Appellant contends that the note set forth in plaintiff's first cause of action was merged in the judgment rendered in Wisconsin; that no suit may be maintained on the note, and consequently that the answer alleging the facts relating to the judgment rendered in Wisconsin stated a defense. In our opinion such contention is not well founded. According to the averments of the answer the judgment rendered in Wisconsin did not purport to determine whether plaintiff was entitled to a personal judgment against the defendant on the note. Nor does it appear from such averments that there was any demand in the suit brought in Wisconsin for such judgment, or even that the court had any jurisdiction to render personal judgment against the defendant. According to the allegations in the answer the defendant was residing in North Dakota when the suit was brought, and has continually resided in this state since that time, and there is no averment that the Wisconsin court ever obtained or claimed jurisdiction of his person so as to authorize it to render a personal judgment against him; nor is there any averment that such relief was sought in the action brought in the Wisconsin court. As we construe the answer, the suit in Wisconsin was one in rem, brought solely for the purpose of cancelling or foreclosing the land contract, and the determination of the amount due was not a personal judgment at all, but merely fixed the amount which must be paid to effect a redemption. According to the allegations of the answer, the note in suit here was not executed at the time the land contract was executed, and as evidence of unpaid purchase price. It was executed in payment of interest which had accrued and was payable upon the notes described in the land contract. It was executed and delivered while the land contract remained in full force and effect, and was accepted in payment of an actual, present obligation of the defendant. Neither the contract nor the judgment are before us except as the provisions thereof are set forth in the an-

swer. In construing the sufficiency of the pleading we must, of course, assume that the averments of the answer are true and we can neither take away nor add anything to the matters alleged in the answer. In other words, we cannot assume either that the contract or judgment contain provisions less favorable to the plaintiff than he has alleged them to be, nor can we assume that they contain any provisions more favorable to him than his pleading avers.

(2) Defendant's counterclaim is predicated upon an alleged breach of contract on the part of the plaintiff. According to the counterclaim plaintiff and defendant entered into the following agreement: "That defendant would leave the management of said farm in the hands of the plaintiff; that plaintiff would supervise the running of the said farm, determine the crops to be put in from year to year, the manner and method of cultivating and cropping the same and of disposing of said crops, and, in general, would see that said farm was operated in good and husbandlike manner; that plaintiff would look after and supervise the use and care of all of the personal property of the defendant on said farm, consisting of horses, cattle, poultry, farm tools and machinery, and other personal property, and would notify defendant of any proceeding or contingency whereby the said property, either real or personal, or both, might be disposed of, sold or taken from their possession, and would, in case of such proceeding or contingency, protect the property and interests of the defendant to the best of its ability; and, in fact, would look after all of defendant's said property, real and personal, in an efficient, faithful and husbandlike manner."

It is this agreement, or rather the alleged breach thereof, which forms the basis for defendant's counterclaim.

We are agreed that the trial court was correct in holding that the counterclaim did not state facts sufficient to constitute a cause of action against the plaintiff. The complaint alleges, and the demurrer admits, that the plaintiff "at all times mentioned in the complaint was a banking corporation, organized and existing under and by virtue of the laws of the state of Wisconsin, and doing business in the city of Sturgeon Bay, Wisconsin." Defendant invokes the rule that statutes of other states must be pleaded; and he asserts that inasmuch as the statutes of Wisconsin, relating to the powers of banking corporations, are not pleaded it must be assumed that the plaintiff corporation was

authorized to make the contract set forth in the answer. Assuming, without deciding, that the rule relating to the pleading of foreign statutes is applicable, it does not follow that it must be assumed that a banking corporation was authorized to enter into the contract set forth in the answer. In the absence of rebutting evidence, the law of a sister state is presumed to be the common law. Comp. Laws, 1913, subd. 41, § 7936. And evidence of the common law is found in the decisions of the tribunals. Comp. Laws, 1913, § 4330.

While the functions of banks and banking corporations have been considered and discussed by the courts in many cases, in more recent times such discussion has been principally concerned with the interpretation of statutes; for not only has Congress provided for the incorporation of national banking corporations, but most of the states have provided for the incorporation of banking corporations. It is a matter of common knowledge that the National Banking Act and the acts of the various states prescribe regulations for the conduct of the business of such banking corporations and place limitations upon their powers. And it is well settled that because of the nature of the business, the relation which it bears to the fiscal affairs of the people and the revenue of the state, the banking business is a proper subject for regulation under the police power of the state, and that such power extends even to the prohibition of engaging in the business of banking except upon such condition as the state may prescribe. State v. Woodmansee, 1 N. D. 246, 11 L.R.A. 420, 46 N. W. 970; Noble State Bank v. Haskell, 219 U. S. 104, 55 L. ed. 112, 31 L.R.A.(N.S.) 1062, 31 Sup. Ct. Rep. 186, Ann. Cas. 1912A, 487. It is also well settled that the rule that a corporation can act only in the manner prescribed by law (7 R. C. L. p. 538) and that its charter furnishes the measure of its powers (7 R. C. L. p. 526; 7 C. J. pp. 785, 786) applies even more strictly to banking corporations than to corporations organized for business or trading purposes. (2 Fletcher, Cyc. Corp. § 859, pp. 814, 815). The regulations and limitations imposed upon banking corporations are intended to safeguard the rights of the depositors; and to that end such corporations are generally prohibited from entering into any business ventures other than those reasonably necessary to effectuate the business for which the corporation was created, namely, the business of banking. See Weston v. Estey, 22

Colo. 334, 45 Pac. 370. The contract in this case did not involve a banking function, but one of a wholly different nature. The general rule is that a banking corporation has no power to assume any duties of the nature which it is claimed were assumed here. 1 Morse, Banks & Bkg. 5th ed. §§ 56, 71; 2 Fletcher, Cyc. Corp. pp. 1815, 1816; 7 C. J. 588; Weston v. Estey, 22 Colo. 334, 45 Pac. 367. See also International Harvester Co. v. State Bank, 38 N. D. 632, 166 N. W. 507. This is not a case where a banking corporation has entered into a contract outside of its powers and as a result thereof has received into its possession either property or monies, and, when it is asked either to perform the agreement or disgorge what it has received, seeks to assert the defense of ultra vires, and authorities dealing with a situation of that kind are not at all applicable. For the plaintiff in this case received no benefit whatever under the contract set forth in the answer.

Appellant further contends that, in any event, the trial court should have afforded him an opportunity to plead over, and that the failure to so do constitutes error. It appears from the record on appeal that the defendant first interposed an answer wherein he asserted the same alleged defense and counterclaim which are involved on this appeal. The plaintiff demurred. The demurrer was sustained, with leave to plead over. The defendant thereupon served the answer involved on this appeal. Plaintiff thereupon again demurred. The demurrer was sustained, and so far as the record shows no application was made for leave to plead over, and there is nothing to indicate that any further or additional facts could be pleaded which would constitute either a defense or counterclaim. In these circumstances, it cannot be said that the trial court committed any error in not granting defendant leave to plead over. 6 Enc. Pl. & Pr. 362, 366; Weatherer v. Herron, 27 S. D. 651, 132 N. W. 232.

Affirmed.

JOHNSON, BIRDZELL, and NUESSLE, JJ., concur.

BRONSON, Ch. J., concurs in result.