In this case there was a demurrer to the complaint on the ground that it did not state a cause of action. The trial court overruled this demurrer and defendant bank alone appeals.
The complaint states that the defendant Elk Valley Bank is a state banking corporation and that defendant A. Stonehouse is its cashier and was such since prior to 1906; that John C. McWilliams who died in 1919 possessed of a large estate in Grand Forks County had in 1906 duly executed his last will "and that shortly thereafter he delivered his last will and testament to the defendant, A. Stonehouse, in the said defendant Bank at Larimore, North Dakota, to be kept and preserved by the said defendants, and that he thereby made the said defendants the custodians of his last will and testament and that the defendant Stonehouse, as cashier of said bank, received and accepted the same and took possession thereof, and placed the same among the files of said *Page 860 
defendant bank for safekeeping, but that the said defendants, each and both, neglected and failed to deliver said last will and testament to the judge of the county court after having positive knowledge of the decease of said testator, excepting as hereinafter more fully set forth." It is further alleged that during proceedings for the probate of this estate a woman appeared therein claiming to be the daughter of the deceased and his sole heir at law, resulting in litigation both in the county and district courts of Grand Forks county ending in a settlement being made with that contestant; that all such proceedings were had in the absence of the will in question; that these plaintiffs had then no knowledge of the will, although defendants did; that under the terms of the will the deceased had devised to the plaintiffs a half section of land in Grand Forks county, North Dakota, of the present value of $12,000; that in the settlement made with the person mentioned the land devised to these plaintiffs was, with other property, transferred and set over to that claimant and thereby lost to these plaintiffs. The complaint further alleges that this will was later discovered in the bank and that it was, on September 18th, 1925, delivered by the defendants to the judge of the county court, and was duly admitted to probate. Damages are claimed in the sum of $12,000 bottomed on the failure of the defendants to deliver the will to the judge of the county court as provided by law. It is the claim of the plaintiffs that had the will been produced before the settlement referred to, there would have been sufficient funds in the estate to have paid out that settlement without resorting to any specific devise; and that in such event these plaintiffs would not have lost their land nor have suffered damage.
The complaint discloses an attempt to invoke the penalty of § 8629, Comp. Laws 1913, which section reads:
"Custodian to Deliver Will. — Liability for Failure. — Every other person having the custody of a will must immediately after receiving knowledge or information of the death of the testator deliver the same to the judge of the county court having jurisdiction of the case; and if he neglects to perform that duty he shall be liable to each and every person interested in the will for all damage caused by such neglect."
Appellant urges as controlling (1) that the bank could not, under the banking laws of this state become the custodian of a will, such act being ultra vires and without consideration, and (2) that a will is not *Page 861 
such property as may become the subject of a special deposit. These propositions may be discussed together.
Section 5150, Comp. Laws 1913, relating to the powers of state banks, so far as material in this case, reads:
"Powers. . . . 7. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, bills of exchange, drafts and other evidences of debt, by receiving deposits, by buying and selling exchange, coin and bullion, by loaning money upon real or personal security, or both; . . ."
What are the functions of a bank as defined by this statute? The unbroken trend of our legislation has been to require of state banks a strict adherence to those lines of business falling unquestionably within well established banking activities. There is contemplated only the exercise of those powers expressly given or which are implied because necessarily incident to the carrying on of such business. In constructing our banking system the legislative assembly has followed the strict but wholesome safe-guards of the national banking act. This court has consistently pointed out the necessity of compliance with the standards thus imposed to protect not only the interests of the public but those of stockholders as well. Thus we have held: That where a state bank failed to make an agreed loan, resulting in the loss of land because the owner was unable to make redemption thereof, it appearing that the promised amount was in excess of the maximum which that bank could under the law loan to one person, a person "doing business with a state bank is charged with knowledge of the law relating to the amount that can be loaned to one person," and that "a contract to make such a loan, when violated, does not subject the bank to damages for its breach" (Wald v. Wheelon, 27 N.D. 624, 147 N.W. 402); that a state bank is not liable on its guaranty of the obligation of another not arising in the disposition of its own paper, such act being beyond its charter powers and not a banking function (International Harvester Co. v. State Bank, 38 N.D. 632, 166 N.W. 507); that the breaching of a contract by a state bank for the supervising and management of a farm, being wholly ultra vires, creates no liability against the bank (Dorr County State Bank v. Adams, 51 N.D. 300-307, 199 N.W. 941); *Page 862 
that the note of a bank given for real estate other than to be used for banking purposes is void (Smith v. Rennix, 52 N.D. 938,204 N.W. 843).
Mr. Justice Christianson, speaking for this court in Dorr County State Bank v. Adams, supra, said: "That its charter furnishes the measure of its powers applies even more strictly to banking corporations than to corporations organized for business or trading purposes. The regulations and limitations imposed upon banking corporations are intended to safeguard the rights of depositors; and to that end such corporations are generally prohibited from entering into any business ventures other than those reasonably necessary to effectuate the business for which the corporation was created, namely, the banking business."
In Myers v. Exchange Nat. Bank, 96 Wn. 244, L.R.A. 1918A, 67, 164 P. 951, the precise question now before us was presented. That court said: "The right to receive special deposits is impliedly granted, but these special deposits must be incidental to the business of banking. . . . The bank is required to make frequent reports to the comptroller. . . . If a national bank may be permitted to hold a will for safekeeping for one of its customers, it can do so for all. . . . If liable at all in consequence of such holding there might arise many large obligations which would not appear in the report . . . thus nullifying at least some of the safeguards of the statute." In American Nat. Bank v. Adams, 44 Okla. 129, L.R.A. 1915B, 542, 143 P. 508, it appears that a national bank had received and stored a stock of shoes. The bank was sued on the theory that it had made delivery to another than the person entitled to the goods. The court said (see syllabus): "A national bank may receive special deposits such as notes, stocks, bonds, securities, bills of exchange, etc., the handling of which in their very nature comes within the regular line of bank business and the acts of the cashier in receiving such deposits are binding on the bank. Allowing a stock of shoes in which the bank has no interest to be stored in the back end of the bank is not a transaction coming within the general lines of banking business and is not within the general scope and meaning of the term `special deposits.'" The reasoning of the Washington and Oklahoma courts accords with our own decisions referred to and appeals to our judgment as a correct statement of the law.
Becoming custodian of a will is not within either the granted or implied *Page 863 
powers of a North Dakota state banking corporation, the act of accepting of the same by the bank for custody and safekeeping is beyond its charter powers, and, in the absence of consideration or benefit to the bank, forms no basis for the recovery of damages either by reason of contract or under the penalty of the statute. Such practice, if liability may attach, might result in sweeping away the entire assets of a bank, depriving it of its ability to meet its obligations to its depositors. An examination of its condition might show it apparently sound while such hidden liabilities might render it hopelessly insolvent. In North Dakota we search in vain for a specific statutory authorization to a bank to perform such business as it is charged in the complaint defendant attempted. Nor can it reasonably be contended such transactions are necessary or incidental to the exercise of its granted powers. No element of banking prescribed by the statute is involved in such service. A bank may not be permitted to subject itself to the penalties of the statute under which this action is brought. It cannot consistently with the rights of depositors be thus allowed to jeopardize its solvency. Limitations on the powers of banking corporations, the regulatory measures found in the statutes, experience has demonstrated are necessary for the protection of those entrusting their funds to these institutions. The public has a right to rely on the security thus afforded. Every one is bound to know that dealings of the nature set out in this complaint are as to a bank ultra vires.
But it is urged that the two cases last quoted have reference to national banks while this defendant is a state bank. This court in passing on the powers of state banking corporations, reviewing federal decisions defining the powers of national banking corporations, said: "In view of the close relationship of our statute with the national banking act, from which it is admitted that the act of 1890 is copied, these decisions are, we think, decisive . . . and we have no hesitation in adopting their interpretation. . . ." First Nat. Bank v. Michigan City Bank,8 N.D. 608-612, 80 N.W. 766.
Our conclusion is that the complaint not only fails to state a cause of action but it is apparent that no cause of action may be stated out of the existing facts.
The order of the district court is reversed and the case is dismissed. *Page 864 
CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.
BURR, J., did not participate: C.W. BUTTZ, Judge of the Second Judicial District, sitting in his stead.