WILLIAM H. STRATFORD, Appellant, *v.* EDWARD R. JONES et al., Respondents.

An unauthorized sale, by a broker, of stock purchased by him for a customer although a conversion, does not of itself constitute such a fraud as was contemplated by the provision of the late Bankrupt Act (U. S. R. S., § 5117), which declares that no debt created by the fraud of the bankrupt shall be discharged by proceedings in bankruptcy.

Nor does the insolvency of the broker, at the time of the conversion conclusively establish a fraudulent intent.

(Argued December 8, 1884; decided January 20, 1885.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of defendants, entered upon an order made April 3, 1882, which overruled plaintiff's exceptions and directed judgment upon a verdict rendered in pursuance of the directions of the court. (Reported below, 16 J. & S. 185.)

This action was brought to recover damages for the alleged conversion of two hundred shares of New Jersey Central rail-

road stock. Defendant set up as a defense a discharge in bankruptcy.

The material facts are stated in the opinion.

*Edward M. Shepard* for appellant. At least a *prima facie* case of fraud was established by the plaintiff's evidence. (*Hall* v. *Naylor*, 18 N. Y. 588; *Wright* v. *Brown*, 67 id. 14; *Roebling* v. *Duncan*, id. 598; *Hennequin* v. *Naylor*, 24 id. 139.) The absence of any evidence on the part of the defendants tending to show that they were ignorant of their insolvency, and intended to pay the plaintiffs, made this presumption conclusive. (*Devoe* v. *Brandt*, 53 N. Y. 462; *Morgan* v. *Skiddy*, 62 id. 319; *McKewen* v. *Cotching*, 27 L. J. Ex. 41.) There being no conflict, the plaintiff was entitled to a verdict as a matter of law. (*Toles* v. *Adee*, 91 N. Y. 562.) If the plaintiff, as a matter of law, established a *prima facie* case of fraud, then the debt was not barred by the discharge in bankruptcy. (*Argall* v. *Jacobs*, 87 N. Y. 110; *Bradner* v. *Strang*, 89 id. 299; *Johnson* v. *Whitman*, 10 Abb. [N. S.] 111; *Johnson* v. *Worden*, 47 Vt. 457; *Stokes* v. *Mason*, 10 R. I. 261; *Neal* v. *Clark*, 95 U. S. 704; *Schufeldt* v. *Schnitzler*, 21 Hun, 462.) The allegation of conversion in the complaint does not bar the claim for debt, or for money had and received. (*Conaughty* v. *Nichols*, 42 N. Y. 83; *Austin* v. *Rawdon*, 44 id. 63; *Reid* v. *Martin*, 4 Hun, 590; *Sparman* v. *Keim*, 83 N. Y. 245.) Assent by the plaintiff to the account rendered by the defendants does not bar the plaintiff's demand. (*Lambertson* v. *VanBoskerk*, 4 Hun, 628; *Rhode* v. *Bate*, L. R., 1 Ch. App. 257; *Sharp* v. *Leach*, 31 Beav. 495; *Moxon* v. *Payne*, L. R., 8 Ch. App. 881; *Huguenin* v. *Basely*, 14 Ves. 173.)

*J. Warren Lawton* for Davidson, respondent. The discharge of defendant in bankruptcy proven is a complete defense. (*Hennequin* v. *Clews*, 77 N. Y. 427; affd. U. S. Supr. Ct., Alb. Law Jour., Vol. 30, No. 10, p. 191; *Palmer* v. *Hussey*, 78 N. Y. 303; *Scott* v. *Porter Bros.* 93 Penn. St. 38; *Sumner* v. *Richie & White*, 54 Iowa, 554.)

*Will Man* for Jones, respondent.  The stock being held by defendants at the day of its sale by them, as collateral security, for the difference between the amount due him, $5,902.53, and the value then of the stock, $6,550 (accepted by plaintiff as its value, by his lack of proving any other), they had the right to sell it, and their neglect to give him notice made the sale a technical conversion only.  (*Hennequin* v. *Clews*, 77 N. Y. 427 ; 30 Alb. Law Jour. 191 ; *Palmer* v. *Hussey*, 87 N. Y. 303.)

RAPALLO, J.   The plaintiff appears to have had dealings with the defendants as stock brokers, in the course of which they bought and sold stocks and gold for him and he deposited money with them.   On the 1st of July, 1878, they bought on his order, and for his account, two hundred shares of stock of the New Jersey Central Railroad Company at a cost of $7,800. The plaintiff claims that when this stock was bought he had enough money to his credit with the defendants to pay for it. The plaintiff, who was the only witness examined in the case, testified that he did not know how much money he had with defendants, but that he thought he had more than enough to pay for the stock.   That he asked the defendant Davidson if there was plenty of money to buy it, and he said yes.   On the 23d of August, 1878, the defendants sold the stock without any authority from the plaintiff, for $6,525, and failed the same day.   On the following day the plaintiff was in the office of the defendants, and in answer to plaintiff's question, why they had sold him out, the defendant Jones said that it had to be done; that they had suspended because they did not want to lose any more money, and by suspending then they could pay every dollar with interest.   They afterward went into bankruptcy, and the plaintiff proved his claim, attaching to his proof an account purporting to have been rendered to him by the defendants, commencing February 28, 1878, and brought down to August 25, 1878, and showing a balance then due him of $5,902.53, which amount he claimed to be owing to him from the bankrupts.   This account does not show any considerable

amount to the credit of the plaintiff on the 1st of July, 1878, when the stock in question was bought, and the state of the account between the parties at that time is not otherwise shown. It does appear, however, that although the two hundred shares of stock cost $7,800, and brought $6,525, the final balance due the plaintiff was only $5,902.53. Whether the stock was ever actually in the possession of the defendants, or had been bought upon a margin, or was hypothecated, does not appear.

The plaintiff claims that the sale of this stock by the defendants when they were about to fail, or had failed, was an actual fraud, which brings the case within the exception in the Bankrupt Law (U. S. R. S., § 5117), which provides that no debt created by the fraud or embezzlement of the bankrupt  *  *  * shall be discharged by proceedings in bankruptcy.

We do not think that the testimony conclusively proved the fraud alleged, so as to entitle the plaintiff to a direction of a verdict in his favor. At most, the evidence raised a question of fact, which might have been submitted to the jury. No request to that effect was made, but both parties requested the court to direct a verdict. Under these circumstances it has often been held that the parties must be deemed to have submitted the questions of fact, if any, to the decision of the court, and waived the right to go to the jury. (*O'Neill* v. *James*, 43 N. Y. 84, and subsequent cases.)

The decision of the court, therefore, stands in the place of a verdict of the jury. The evidence being such that a verdict for the defendants could have been sustained, the direction to find such verdict was not error under the circumstances. The unauthorized sale of the stock was a conversion, but did not constitute such a fraud as is contemplated by the Bankrupt Act. (*Hennequin* v. *Clews*, 77 N. Y. 427; *Palmer* v. *Hussey*, 87 id. 303.) Neither, under the circumstances, was the insolvency of the defendants at the time of the sale conclusive evidence of a fraudulent intent.

The judgment should be affirmed.

All concur.

Judgment affirmed.