ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* MULKEY.

Opinion delivered July 10, 1911.

1. TRIAL—EFFECT OF BOTH PARTIES ASKING PEREMPTORY VERDICT.—Where each of the parties to an action requested the court to direct a verdict in his favor and requested no other instruction, they in effect agreed that the question at issue should be decided by the court, and the court's finding had the same effect as the decision of a jury would have had. (Page 73.)

2. ADVERSE POSSESSION—MISTAKE AS TO BOUNDARY.—The fact that one in possession of land was mistaken as to the true boundary line did not prevent his possession being adverse to the true owner if he inclosed and occupied the land as his own. (Page 74.)

3. SAME—TACKING POSSESSION.—Where defendant and her grantors have had continuous adverse possession of the land in controversy during the statutory period under the mistaken belief that it was contained in their deeds, defendant is entitled to tack their adverse possession to hers to complete her title. (Page 75.)

Appeal from Lafayette Circuit Court; *Jacob M. Carter,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is an ejectment suit brought by the railway company against appellee for a strip of land 100 feet in length east and west and 10 feet wide north and south, in the town of Lewisville, Arkansas, lying between a lot purchased by W. G. Wadley from John Ingram on February 6, 1906, the description in the deed conveying only a tract of land of certain dimensions which does not include this strip.

It was alleged that it was part of the railway reservation; that said Ingram fifteen or sixteen years prior to the institution of the suit bought the lot adjoining this strip on the south side and fenced it up with this lot, in ignorance of the true boundary and not intending to inclose any land not described in the conveyance, and that he conveyed it to said Wadley on the 6th day of February, 1906, who on June 18 of the same year conveyed it to appellee. She claimed the land by adverse possession, and the testimony showed that in 1895 or 1896 John Ingram, who first bought the lot, fenced the strip of land in controversy including it with the lot described in his deed in his front yard, thinking he owned it; that he only claimed what he thought was in his own deed, and that, if this land was not contained in his deed, he was mistaken as to the boundary line; that when he deeded the land to Mr. Wadley he thought it was his land, and that his fence was on the line, and that he intended to convey all the land inclosed with his fence; that it had been so occupied and held by him, and he never knew any better until the railroad survey was made after he sold it.

Answering the question, "At the time you made the deed, what land did you intend to convey to Wadley and put him in possession of, with reference to what you had fenced?" he said, "I intended to put him in possession of the very piece of land that I got from the Southwestern Improvement Association, which I supposed covered my entire fenced land, the entire

place I had fenced up, and I did place him in possession of it. I claimed to be the owner of this strip of this yard, and didn't know any better until they surveyed it."

The appellee testified that she was put in possession of the land by Mr. Wadley, who bought it from Mr. Ingram in the year 1906, and had held it as her own; that when they bought it from Ingram he said it was all his, and she had claimed it as her own. The land was bought for her by her brother, Mr. Wadley, who paid for it, took the deed, and afterwards conveyed it to her.

Copies of the deeds from the Southwestern Improvement Association to Ingram, from him to Wadley, and from Wadley to Mrs. Mulkey were introduced in evidence, all showing the same description as in the deed from the Improvement Association to Ingram, which did not in fact include the strip sued for.

Appellant moved the court to direct a verdict for it, which it declined to do, and then on motion of appellee directed a verdict for her. No other instructions were asked by either ide. Judgment was rendered in favor of appellee, from which he railway company appealed.

*S. H. West* and *Gaughan & Sifford*, for appellant.

In order that one may tack possession to establish a claim by limitation, he must hold in privity with his predecessor. 4 L. R. A. 641; 31 N. W. 914; 62 N. W. 85; 56 N. E. 181; 20 Atl. 63; 84 Pac. 835; 58 Pac. 776; 26 So. 854; 51 S. E. 799.

*Searcy & Parks*, for appellee.

A decision of the case by a jury was waived. 123 S. W. 384; 21 N. E. 130; 70 Fed. 778; 35 U. S. App. 774; 90 N. Y. 649; 97 N. Y. 586; 7 N. Y. S. 69; 7 N. Y. 645; 14 N. Y. S. 917; 87 Hun 563; 34 N. Y. 557; 16 N. Y. S. 202; 64 N E. 194; 171 N. Y. 488; 77 N. W. 615; 8 N. D. 162; 58 C. C. A. 58; 68 *Id.* 58; 52 N. E. 1124; 158 N. Y. 680; 54 N. E. 805; 97 N. W. 860; 12 N. D. 497; 26 O. St. 42; 106 N. W. 300; 20 S. D. 353; 37 Atl. 255; 69 Vt. 116.

KIRBY, J., (after stating the facts). It is claimed by appellant that the court erred in directing a verdict for appellee, and by appellee that, since each party asked for a directed

verdict in his favor, neither can complain after judgment that such direction was improper.

It has been frequently and uniformly held by this court that it is not proper to direct a verdict for one of the parties, if there is a disputed question of fact. It has also been held by our court in *Pacific Mutual Life Insurance Co.* v. *Carter,* 92 Ark. 278, 123 S. W. 384, that when one of the parties asks a peremptory instruction and also requests other instructions upon the questions in the case, he does not thereby waive his right to have disputed questions of fact submitted to a jury. We have not before passed upon the question of a directed verdict where each party has requested a peremptory instruction in his favor, and neither has asked for other instructions.

If the case presented a disputed question of fact, either party had the right to require its submission to the jury, who could have decided the issue for either according to its view of the evidence, and their verdict would have been conclusive, if there was any testimony sufficient to sustain it.

It is also true that the parties had the right to waive a jury and submit the matter to the court for trial in the first instance, and, each having requested the court to direct a verdict in his favor and not having requested any other instruction, they in effect agreed that the question at issue should be decided by the court, and waived the right to the decision of a jury, and the court's decision and direction has the same effect as would have been given to the verdict of the jury upon the question at issue, without such direction. *Green* v. *Schute,* 7 N. Y. Supp. 69; *Stratford* v. *Jones,* 97 N. Y. 586; *Merwin* v. *Magone,* 70 Fed. 776, 17 C. C. A. 361; *Love* v. *Scacherd,* 77 C. C. A. 8 and note; *Sigua Iron Company* v. *Brown,* 64 N. E. 194; 171 N. Y. 488; *First M. E. Church* v. *Fadden,* 77 N. W. 615, 8 N. D. 612; *White* v. *Bradley Timber Co.,* 58 C. C. A. 58; *McGuire* v. *Hartford Insurance Co.,* 158 N. Y. 680; *Gilligan* v. *Supreme Council,* 26 Ohio 42; *Mascott* v. *Fire Insurance Co.,* 69 Vt. 116, 37 Atl. 255.

The testimony is practically undisputed that Ingram, who bought the lot now owned by appellee in 1895 or 1896, fenced the strip of land in controversy, inclosing it with said lot in his front yard. Explaining his possession, he testified: "I understood it was mine all the time. I claimed it as the land

I bought from the Southwestern Improvement Association and was holding it as mine, as I thought all the time it was, and so occupied and held it for fifteen or sixteen years until I sold it to Wadley or Mrs. Mulkey, and didn't know any better till after the railroad survey was made." The fact that he was mistaken as to the correct boundary line did not prevent his possession being adverse to the true owner since he inclosed the land by putting his fence where he believed the line was, and claimed and occupied all the land inclosed as his own. *Wilson* v. *Hunter*, 59 Ark. 626; *Bayles* v. *Dougherty*, 77 Ark. 201.

It is next contended that appellee can not claim the benefit of the adverse possession of her grantors because their deeds to her do not include the land. While it is true that the land described in the deed to her does not include the strip in controversy, still her grantors, whose adverse possession had probably already ripened into title, intended it should, and thought it did, and at the time of the conveyance transferred to her the possession of it in fact, intending that she should have all the land within the inclosure. This was sufficient, even if it be conceded that there was no conveyance of it in writing, and constituted such privity as entitled her to avail herself of his or their adverse possession and to tack her possession to theirs if necessary to complete her title and claim of ownership. *Memphis & L. R. Rd. Co.* v. *Organ*, 67 Ark. 94; Wood on Limitations, § 271, pp. 695-6 and cases cited; 1 Cyc. 1006.

Upon the undisputed testimony appellee was probably entitled to a directed verdict, but in any event, the parties having waived a decision by the jury by their said requests for peremptory instructions, the court committed no error in directing the verdict, which is amply sustained by the evidence.

The judgment is affirmed.

McCULLOCH, C. J., (concurring). It is established by undisputed evidence that the defendant's investiture of title to the strip of land in controversy by adverse possession is complete, and I concur in the judgment on that ground alone. I do not believe it is sound to say that the plaintiff, by asking for a peremptory instruction in its own favor, without accompanying the request with one for other instructions, waived its objection to defendant's request for a peremptory instruction or waived its right to have disputed questions of fact submitted to the

jury.    It is not correct, according to my view, to hold that parties waive the right of trial by jury by separately asking the court for a peremptory instruction.    That is not equivalent to joining in a request to the court to decide the issues of fact, instead of submitting them to the jury.

The question of legal sufficiency of evidence is a question of law which must be decided by the court.    *Catlett* v. *Railway Co.*, 57 Ark. 461; *St. Louis, I. M. & S. Ry. Co.* v. *Coleman*, 97 Ark, 438.    A party has the right to test that question by obtaining a ruling of the court thereon, without waiving his right to go to the jury on disputed questions of fact in the event that the court rules against his contention.    He does not, by making a fruitless effort to obtain a peremptory instruction in his own favor, waive the right to object to a peremptory instruction in favor of his adversary, nor does he thereby agree that the court may take the case away from the jury and decide the issues of fact.

The contrary view, as announced by the majority, may be consistent with the practice in other jurisdictions where the courts laid down this rule, but it is inconsistent with the practice which has always prevailed here, and I think it is wrong.