STAGGS *v.* JOSEPH.

## Opinion delivered April 2, 1923.

1. APPEAL AND ERROR—EFFECT OF BOTH PARTIES REQUESTING PEREMPTORY INSTRUCTION.—Where both parties request a peremptory instruction and do nothing more, they thereby submit the case to the court, and its finding is as conclusive as the verdict of a jury and will be affirmed if the testimony is legally sufficient to warrant such finding.

2. VENDOR AND PURCHASER—BONA FIDE PURCHASER.—A quitclaim deed is a substantive form of conveyance, and a party holding thereunder may be entitled to protection as an innocent purchaser.

Appeal from Clay Circuit Court, Eastern District; *W. W. Bandy,* Judge; reversed.

### STATEMENT OF FACTS.

This is an action of ejectment by Odus Staggs against Thomas Joseph and others, to recover forty acres of land in the Eastern District of Clay County, Ark.

The defendants denied title in the plaintiff, and asserted title in themselves.

It appears from the record that on the 10th day of May, 1881, the State of Arkansas executed a donation deed to the land in controversy to T. J. Higdon, and his deed was duly filed for record in the recorder's office in the Eastern District of Clay County, Ark. Both parties to this lawsuit dereign title from him.

T. J. Higdon was a witness for the plaintiff. According to his testimony, he first sold the land to R. B. Self and delivered him a deed to it. Self took possession of the land under the deed. The deed to Self is not in the record. On the 18th day of August, 1898, R. B. Self executed a deed to said land to John Staggs, which was filed for record on the 26th day of November, 1920. The consideration in the deed was $350. John Staggs died on Nov. 3, 1898. After his death his widow lived on the land something like a year, and then moved into the State of Missouri.

According to her testimony, Odus Staggs, the plaintiff, was born June 25, 1899, and is the son of John Staggs. She married John Baker, her present husband, on Jan. 12, 1899. After Odus was born, she and John Baker executed a deed to the land in controversy to Lee Costly in exchange for other lands. R. B. Self paid the taxes on the land for the years 1888 to 1897, inclusive, and John Baker paid the taxes on the land for the years 1898 and 1899. Thomas Joseph dereigns title as follows: On the 20th day of December, 1902, T. J. Higdon executed a quitclaim deed to said land to Lee Costly, which was duly filed for record. The consideration recited in the deed was $50, but no consideration was actually paid. On the first day of March, 1904, Lee Costly executed a warranty deed to P. J. Nye, which was duly filed for record. The consideration in this deed was $550. On the 18th day of October, 1909, P. J. Nye executed a warranty deed to B. B. Bowlin to said lands, which was duly filed for record, and the consideration recited in the deed was $1,350. On the 19th day of October, 1912, B. B. Bowlin executed a warranty deed to said lands to T. H. Mason for a consideration of $2,500, and this deed was duly filed for record. On the 6th day of December, 1916, T. H. Mason executed a warranty deed to said land to Thomas Joseph for the consideration of $1,700, and this deed was duly filed for record.

Thomas Joseph and his grantors have paid taxes on said land from the year 1900 to 1921 inclusive. They have also been in possession of the land since it was purchased by Lee Costly in 1899. . All these parties paid for the land the consideration recited in their deeds. Joseph paid Mason $1,700 for the land, and had no notice that any one else claimed any interest in the land when he bought it.

At the close of the evidence both the plaintiff and the defendants requested a peremptory instruction, and asked for no other instruction. Whereupon the court

withdrew the submission of the case from the jury and found for the defendants.

From the judgment rendered the plaintiff has duly prosecuted an appeal to this court.

*W. E. Spence* and *Gautney & Dudley,* for appellant.

Appellant's ancestors bought the land August 18, 1898, and died seized and possessed of same Nov. 3, 1898. Appellant was born June 25, 1899, and Costly, the vendor of appellee, received a quitclaim deed from Higdon, from whom both parties deraign title, on December 20, 1902. Appellant's title is by descent and not by deed. Costly's quitclaim deed from Higdon not only put him upon inquiry but was in itself notice of a defective title. *Morrison* v. *Kelley,* 74 Am. Dec. 169, and note; *Knapp* v. *Bailey,* 1 A. S. R. 295. Appellant inherited the lands, and the title never passed from him, and, being an infant, the defense of an innocent purchaser for a valuable consideration is not available against him. *Harrod* v. *Myers,* 21 Ark 592; *Rowe* v. *Allison,* 87 Ark. 206. Costly not an innocent purchaser. *Gaines* v. *Saunders,* 50 Ark. 322; *White* v. *Moffett,* 108 Ark. 490. Acquired no title from Higdon, who had none by the quitclaim deed. Court erred in not directing a verdict for appellant.

*Thomas Joseph, T. H. Mason, P. J. Nye,* appellees, *pro se.*

Appellees were innocent purchasers of the lands for a valuable consideration, and without notice of any defects in the title. 18 Corpus Juris 247, § 185. The quitclaim deed in their chain of title did not put them on inquiry nor constitute notice of a defective title. *Bell* v. *South Arkansas Land Co.,* 129 Ark. 305; *Brown* v. *Helms,* 86 Ark. 398; *Moore* v. *Morris,* 108 Ark. 516. There was nothing of record to show that appellant's father ever owned the lands. *Chaddick* v. *Morris,* 137 Ark. 467; *Rubel* v. *Parker,* 107 Ark. 314. The judgment should be affirmed.

Hart, J., (atfer stating the facts). Under our practice, where both parties request a peremptory instruction and do nothing more, they thereby submit the case to the court, and the finding of the court has the same binding effect as the verdict of a jury, and it will be affirmed on appeal if the testimony is legally sufficient to warrant such finding. *St. L. S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71, and *Watkins* v. *Louisiana State Life Ins. Co.,* 151 Ark. 596.

T. J. Higdon is the common source of title to both parties in this case. He executed a quitclaim deed to said lands to Lee Costly, which is in the chain of title of the defendants.

It is claimed by counsel for the plaintiff that, under the circumstances, the defendant, Thomas Joseph, cannot be a *bona fide* purchaser of the land and entitled to protection as such. It is insisted that, because there is a quitclaim deed in his chain of title, he is thus notified as a matter of law that there may be some defect in his title, and he must take it at his own risk. This is not the law in this State. A quitclaim deed is a substantive form of conveyance, and a party holding under such deed may be entitled to protection as an innocent purchaser. *Henry Wrape Co.* v. *Cox,* 122 Ark. 445, and cases cited, and *Bell* v. *South Ark. Land Co.,* 129 Ark. 305, and cases cited.

In the last mentioned case it was expressly stated that the fact that one of the deeds in appellee's chain of title was a quitclaim deed did not of itself bar him of his defense as an innocent purchaser. There may be many reasons why the holder of real estate may refuse to execute a warranty deed to it. He may be unwilling to assume any personal responsibility as to its title, or, from his own peculiar notion, he may refuse to execute anything but a quitclaim deed. Hence the purchaser desiring the property is unable to secure a conveyance in any other form than one of quitclaim. Therefore it would be unreasonable to hold, as a matter of law, that

he should be denied the position of a *bona fide* purchaser merely because there was a quitclaim deed in his chain of title. A quitclaim deed operates to divest title out of the grantor and to transfer a complete title to the grantee. Hence the mere fact that there is a quitclaim deed in the chain of title in the grantee does not raise a conclusive presumption of his want of good faith in purchasing the land.

In the present case the grantee paid full value for the land, and had no notice whatever of any claim of the plaintiff. The defendant had the record title to the land, and the court, under the circumstances, was warranted in finding that he was a *bona fide* purchaser for value.

Therefore the judgment will be affirmed.