GENERAL CONTRACT PURCHASE CORPORATION *v.* ROW.

4-7685                                        188 S. W. 2d 507

Opinion delivered June 25, 1945.

*S. M. Casey, W. D. Murphy, Jr.,* and *Eric Babendreer,* for appellant.

*Dene H. Coleman,* for appellee.

McFADDIN, J.   At the close of the evidence each side requested an instructed verdict, and no other instructions. The trial court instructed for the appellee, and appellant claims error.  Is there sufficient, competent evidence to sustain the instructed verdict?  That is the question.

### THE FACTS

On December 8, 1941, the Holden Motor Company sold a truck to Jesse Rutledge, who executed a conditional sales contract and note for $503.85, and also obtained and assigned to the motor company an insurance policy on the truck.  Before maturity, the note, contract and fire insurance policy were transferred with recourse by Holden Motor Co. to appellant, General Contract Purchase Corp.  There was a balance in excess of $450 due on the truck when it was damaged by a fire on May 22, 1942.  The appellant notified the insurance company, who referred the adjustment of the damage to Fire Companies' Adjustment Bureau.  The representative of that bureau who handled this adjustment was Joe E. Finch.

Finch examined the damaged truck, and took a bid on the salvage. The appellee, Roy Row, trading as Row Auto Parts Co.; bid $125 for the salvage. Delay was experienced in getting the notemaker, Jesse Rutledge, to execute the proof of loss and other papers. On November 21, 1942, Finch wrote Roy Row a letter reading:

"I am enclosing Proof of Loss, in the amount of $357, for Jesse Rutledge's signature. I do not know if you can do anything with this or not, but if so it will enable me to get this file out of the way before the end of the year. We are running into difficulty in our salvage disposals now, due to the gas rationing plan requiring tires to be registered, and I hope you can work this out so that you can deal direct with Jesse Rutledge for the salvage.

" I have arrived at the company's liability as follows:

"Value of truck at time of loss ................................................$450
"Value of salvage ................................................$125
"Less wrecker service ................................$17
"Less allowance on storage ....................$15

|  | 32 | 93 |
|---|---|---|

"Insurance company liability ...............................$357

"I do not know what Holden will want to charge for storage but if assured will stand any difference between proper amount and the $15 I have shown, that will enable us to dispose of this claim of long standing. On the basis of this settlement, if acceptable to the assured, we will have no interest in the salvage. You can so handle that you will get the salvage, if you so desire, and settle with him direct for it."

Acting on that letter, Row obtained the execution of the proof of loss, etc., by Rutledge and paid Rutledge for the salvage and took possession of same. On December 11, 1942, Finch reported to the insurance company, *and sent a copy of the report to the appellant, General Contract Purchase Corp.* In this report Finch gave the detailed statement as heretofore listed, to show how the

figure of $357 was reached, and then added this paragraph about the salvage:

"Since we are allowing salvage to remain in hands of purchasers, wherever possible, we were able to leave salvage with purchaser on the basis of high bid by Row Auto Parts Company of Batesville, Arkansas, being $125. We agreed to accept tow bill of $17, as made by Holden Motor Company for pulling salvage in, and allowed $15 on accrued storage, assured to assume difference necessary to regain possession of salvage."

After the receipt of the above report, the appellant received the $357, and applied the same as a partial payment on the Rutledge note. Appellant's credit manager was interrogated about the report, and the $357; and we quote:

"Q. Did you make an objection to that report after it was filed with you?

"A. No, because we assumed that Jesse Rutledge would send us his check on in to pay it off, the balance due.

"Q. What was the next information you had about it? Did you take any steps to collect the balance on this note from—(Interrupted).

"A. Yes, sir; I had written Jesse Rutledge several letters for the balance of it, and we didn't get it, and we started hunting for the salvage and found out that Roy Row had bought it."

Then, some time after May 29, 1943 (exact date of filing not shown), the appellant filed suit against appellee, Roy Row, for $135, claiming: that appellant was the owner of the truck and salvage by reason of the conditional sales contract; that the balance due on the note was $135; that the value of the salvage was $135; that Row had dismanteled the salvage and sold the parts; and that Row was liable to the appellant for $135 for conversion of the appellant's salvage.

In defense, the appellee, Row, claimed: that the adjustor, Finch, represented himself as authorized to

allow Rutledge to dispose of the salvage; that appellee paid $125 for the salvage (less $17 for towage and $15 for storage); that appellant, General Contract Purchase Corporation, was advised of all of this by the adjustor, Finch, in the report aforesaid; and that the appellant ratified the act of the adjustor, Finch, by accepting the $357.

As stated at the outset of this opinion, when all of the evidence was heard, each side asked an instructed verdict, and no other instructions; and thereupon the trial court instructed a verdict for appellee, Roy Row. Judgment was rendered on the verdict; and after an unavailing motion for new trial, appellant brings this appeal.

I. *The Effect of Each Side Asking for an Instructed Verdict, and Asking No Other Instructions is to Submit the Fact Questions to the Trial Judge.* The parties in effect agree that the issue should be decided by the court, and the court's finding has the same effect as the verdict of a jury, *i. e.,* if there is any substantial evidence to sustain the ruling of the trial court, we affirm the ruling. *St. Louis S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71, 139 S. W. 643, Ann. Cas. 1913C, 1339. See, also, many other cases collected in West's Arkansas Digest, "Trial," § 177.

II. *The Question Then Becomes: Is There Substantial Evidence to Sustain the Ruling?* The appellant claimed title and right of possession by virtue of the conditional sales contract, and such claim is sufficient to support an action for conversion. *Wright Motor Co.* v. *Shaw,* 171 Ark. 935, 287 S. W. 177. See, also, 47 Am. Juris. 86; 55 C. J., 1311; Annotations in 38 A. L. R., 1340; and 73 A. L. R., 805; Estrich on "Installment Sales," p. 820.

On the other hand, the appellee claimed that he acquired the salvage from Rutledge, who was authorized by Finch to dispose of the same, and that appellant ratified the actions of Finch by receiving the $357 after Finch had advised appellant that Row had bid $125 for the salvage. The insurance policy was not introduced in evidence, so we have no information as to what the policy provided about the adjustor's right to dispose of the

salvage; but there can be no doubt that Finch, in his letter to Row, specifically authorized Row to purchase the salvage from Rutledge. The power of the adjustor, Finch, to dispose of the salvage cannot be shown by his own declarations. *Holland* v. *Rogers,* 33 Ark. 251; *Howcott* v. *Kilbourn,* 44 Ark. 213; and many other cases collected in West's Arkansas Digest, "Principal and Agent," § 22.

The issue then becomes: whether the report from Finch to the insurance company, (that is, the copy sent to the appellant, concerning the salvage), constituted notice to the appellant that, in accepting the $357, the appellant was ratifying Finch's act in authorizing Rutledge to sell the salvage to Row. In other words, did the appellant ratify Finch's assumed authority? The statements in the said report are ambiguous. The report read in part: ". . . we were able to leave salvage with purchaser on the basis of high bid by Row Auto Parts Co. of Batesville, Arkansas, being $125 . . . assured to assume difference necessary to regain possession of salvage."

The quoted language could mean that the bid by Row was merely an appraisal to determine the salvage value; or the language could mean that Row had made a *bona fide* bid to buy the salvage from Rutledge conditioned on the appellant accepting the insurance check. This latter interpretation is strengthened by the fact, shown in evidence, that Rutledge, as maker, and Holden Motor Co., as indorser, remained liable to the appellant for the balance on the note. There was no claim that a judgment against either would be uncollectible. But, regardless of the meaning in the report, the language was ambiguous, and the ambiguity presented a question of fact. See *Bailey* v. *Sutton, ante,* p. 184, 185 S. W. 2d 276, and cases there listed, to sustain the statement:

"The rule of law is that where a written contract is ambiguous in whole or in part, the meaning thereof should be left to the jury."

As before stated, the trial court's ruling, in the case at bar, is entitled to the force and effect of a jury ver-

dict. Since the report was ambiguous, the ruling of the trial court constitutes a determination of the fact question—the result being that the trial court in effect found that appellant, by accepting the $357, ratified the act of the insurance adjustor in authorizing Rutledge to sell the salvage to Row.

III. *Ratification.* With the fact question settled against the appellant, the result is the same as if appellant knew that Finch had sold the car to Row, and, so knowing, ratified the acts of Finch by accepting the $357. It is thus an application of the rules of ratification of the unauthorized acts of the agent. *Kirkpatrick Finance Co.* v. *Stotts,* 185 Ark. 1089, 51 S. W. 2d 512; *Messenger Corp.* v. *Bailey Funeral Home,* 205 Ark. 559, 169 S. W. 2d 589. The rule is stated in 2 Am. Juris. 166:

"It is a well-established rule of law that if one, not assuming to act for himself, does an act for or in the name of another upon an assumption of authority to act as the agent of the latter, even though without any precedent authority whatever, if the person in whose name the act was performed subsequently ratifies or adopts what has been so done, the ratification relates back and supplies original authority to do the act. In such cases, the principal, whether a corporation or an individual, is bound to the same extent as if the act had been done in the first instance by his previous authority; this is true whether the act is detrimental to the principal or to his advantage, whether it sounds in contract or tort, or whether the ratification is express or implied."

It follows, therefore, that the judgment of the lower court is in all things affirmed.