BYARS v. GREGORY.

4-9670                                        245 S. W. 2d 803

Opinion delivered February 4, 1952.

Barber, Henry & Thurman, for appellant.

Bailey & Warren, for appellee.

MINOR W. MILLWEE, Justice.    Appellant, Jerre Byars, owned a lot abutting on Palisades Drive, a resi-

dential street adjacent to and west of the City of Little Rock, Arkansas, which was paved in 1949 by appellee, Artie Gregory, a Little Rock contractor. This appeal is from a verdict and judgment against appellant for $278 as his proportionate part of the cost of the paving project.

Ellis M. Fagan completed and moved into a home on Palisades Drive in the summer of 1948. According to the testimony on behalf of appellee, several residents and property owners on the street discussed its condition with Fagan and asked him to do something about getting it paved. Some of the property owners suggested that Fagan might be influential in getting some governmental agency to participate in the project. Fagan discussed the matter with the Pulaski County Judge, the mayors of Little Rock and Cammack Village and members of the State Highway Commission, all of whom refused to participate in the project for various reasons.

In February, 1949, Fagan discussed the paving proposal with Appellee Gregory. The two inspected the street and Gregory estimated the cost of the proposed project. In connection with the agreement then reached between Fagan and appellee, the latter testified: ". . . I knew all the property owners on that street and it was off season in construction work which was at a minimum at that time. I told him [Fagan] I would be glad to do it for them at cost of labor and material and add no profit to it. . , . Q. What was your understanding of the terms of the contract? A. Mr. Fagan instructed me if I would go ahead and do that job he would get the property owners together on that street and work out on a pro-rata basis when the job was completed and would pay on a pro-rata basis, the property owners would. However, he said should any of them fail to he would contact them and would agree I would lose no money in the deal. Q. Was any time limit set in the agreement as to when Mr. Fagan would get the property owners together? A. Within a reasonable time, thirty days after the job was completed and I rendered him a statement as to the cost."

Appellee proceeded immediately with the paving job which was completed early in April, 1949, and notified Fagan of the labor and material costs. On April 11, 1949, Fagan wrote appellant and the other property owners on the street the following letter: ''Your one-man 'self appointed commissioner' of Mortgage Row Improvement District No. 1, who took upon himself the responsibility for blacktopping Palisades Drive is now ready to make his report on this activity and requests the pleasure of having you as Mrs. Fagan's and his guest at No. 6 Palisades Drive at 6:00 p. m., Wednesday, April 13th for refreshments, food and to hear his report. I trust it will be possible for you to be present. Cordially yours, Ellis M. Fagan.''

In response to the invitations, appellant and twelve other property owners along the street assembled at the Fagan home on the appointed date. As to what transpired at the meeting Fagan testified: ''We had dinner, after dinner we met down in the basement, I explained to them what I had done in their behalf; that I was ready now to tell them what it cost and to urge their coöperation in settling the account. I told them who did the work, approximately what it had cost, I told them why I hadn't bothered to go into it with each one in detail, I had in mind the cost of an improvement district, the legal fees, interest, selling bonds and the delay and I told them I felt I knew them all well enough to feel I could represent them; that I had acted in good faith and got the job at very nominal cost and here was what the cost was.'' Fagan also testified that in the negotiations with appellee he explained that he had no authority ''to commit any district.'' Before any action was taken at the April meeting he also told the property owners that none of them could be forced to pay for the improvement. After some discussion of Fagan's report, Alfred G. Kahn, one of the property owners, made a motion that Fagan's action be ratified and that the several owners accept their respective shares of the cost of the project. After a second to the motion it was put to a vote by Mr. Kahn resulting in ''a sprinkling of 'ayes' '' and no votes in the

negative. Fagan testified that appellant indicated his approval of the motion by nodding his head in the affirmative, but this was denied by appellant.

A motion was then adopted without dissent designating Fagan and Mr. Peterson as a committee to engage the services of Warren Baldwin, a Little Rock realtor, to establish the proportion of the cost of the improvement to each property owner. Vernon Jackson, another property owner, then related a discussion he had previously had with the superintendent of the paving crew in which the latter stated that the road would be greatly improved and more nearly permanent if another coat of asphalt was applied. Upon Jackson's recommendation and motion the group, by the same informal action, approved the proposal for the additional coat of asphalt. Appellee was notified of the action taken at the meeting and put down the additional coat of asphalt. Baldwin made the apportionment to each property owner and his report was furnished to appellee who rendered statements to each property owner for his proportionate part of said costs.

The total cost of the project amounted to $6,696.94 of which amount $800 represented the cost of the additional coat of asphalt. Appellee testified that the cost of material alone for the additional work was $1,100 but only $800 was charged because his superintendent had made an estimate in that amount to Mr. Jackson.

Appellant first testified that he did not remember any motion being brought up at the meeting, but later stated that he remembered the motion made by Mr. Kahn. He also stated that he merely remained quiet throughout the meeting except that he told Fagan that he had no intention of building on his lot which was on the corner and the pavement at that point would be worn out before any of the rest. Appellant also stated that he did not know the work had been done until he drove on the street on his way to the meeting at Fagan's home. Fagan had never discussed the paving project with appellant prior to the April meeting.

This action was brought and tried on the theory of appellant's alleged ratification of the unauthorized acts of Fagan in contracting with appellee while purporting or assuming to act as agent for appellant and the other property owners on Palisades Drive. In instructing the jury the trial judge followed the rules approved by this court in such cases as, *Creson* v. *Ward,* 66 Ark. 209, 49 S. W. 827; *Runyan* v. *Community Fund of Little Rock,* 182 Ark. 441, 31 S. W. 2d 743; *Kirkpatrick Finance Co.* v. *Stotts,* 185 Ark. 1089, 51 S. W. 2d 512; *General Contract Purchase Corp.* v. *Row,* 208 Ark. 951, 188 S. W. 2d 507. Although fourteen assignments of error are set out in the motion for new trial, appellant sums up his contentions for reversal as follows: "There was no testimony upon which the court could submit the case to the jury on the plaintiff's theory of ratification by Byars of a contract made by Fagan assuming to act as Byars' agent." It is argued that the testimony conclusively shows that, in making the contract with appellee, Fagan did not assume to be acting as agent for appellant, but was acting solely on his own account and that appellee dealt with Fagan on that basis. Thus the sole question is whether there is any substantial evidence to support the jury's finding that Fagan purported, or assumed, to be acting for appellant, and the other property owners, in making the contract with appellee.

Appellant relies on the Runyan case, *supra,* where the court approved the following statement from Page on Contracts, § 1768: "The doctrine of ratification in agency applies only to the contract of one who is an agent or who claims to act as an agent. A contract made by one who is not an agent and does not claim to act as an agent cannot be ratified. To permit ratification under such circumstances would be to permit a person to whom an offer was not made to force a contract upon a party who did not mean to deal with him." Of course, where one in the execution of a contract did not assume to act for or on account of another, and there was no suggestion in the contract that he was acting for anyone other than himself, such other could not ratify the contract. *Stanton*

v. *Granger,* 125 App. Div. 174, 109 N. Y. S. 134 (affirmed without opinion in 193 N. Y. 656, 87 N. E. 1127).

The rule is more broadly stated by the annotator in 124 A. L. R. 893, as follows: ''The doctrine is well settled that in order that an act or contract may be the subject of ratification by one other than the one who performed the act or entered into the contract, the latter must have, at the time of performing the act or of entering into the contract, professed, represented, purported, assumed, or undertaken to be acting as agent for, or on behalf of, the one alleged to have subsequently ratified the act or contract." See, also, 2 C. J. S., Agency, § 41; 2 Am. Jur., Agency, § 222.

The following comment on the rule in 1 Restatement, Agency, § 85(1) c, is pertinent: ''Purporting to act on account of another does not necessarily mean that the agent represents to the third person that the principal has authorized him to act on his account in the transaction. A person purports to act on account of another if he undertakes to act on his behalf and to make the other a party to the transaction, although the person acting may also manifest to the third person that he does not know whether or not he is authorized, or even that he is not authorized. This situation should be distinguished from that in which one purports merely to undertake to transmit an offer to another. Whether in a particular situation there is an intent to make a present agreement subject to ratification or a mere offer which may be accepted depends upon the understanding of the parties.''

It must be conceded that a difficult question is presented in determining whether Fagan, in making the contract with appellee, purported to act for the appellant and the other property owners, and intended to make a present agreement for them subject to their ratification. Here we have a street more than 2,000 feet long and the paving of which would inure to the benefit of fifteen abutting property owners, all of whom appellee knew personally. The very nature of the contract suggests the

improbability that Fagan assumed to act solely on his own account in the negotiations with appellee. Fagan had been asked by property owners, other than the appellant, to do something about getting the street paved. It is true that he acted without actual authority in making the contract, but it does not necessarily follow that he did not assume to act for all those property owners, including the appellant, who would agree to pay their proportionate part of the costs of the improvement. When the evidence is considered in the light most favorable to appellee, we think the jury was warranted in concluding that Fagau purported to act for appellant in making a contract which the latter ratified with full knowledge of all the material facts connected with the transaction.

Appellant argues that he is not liable, in any event, for any part of the cost of the additional coat of asphalt put down after the meeting on April 13, 1949. We cannot agree that there was no substantial evidence to show that appellant sanctioned this part of the project. Moreover, appellant made no objection to an instruction which told the jury to render a verdict for appellee in the sum of $278 if they found he was entitled to recover. It was also stipulated at the beginning of the trial that if appellant owed appellee anything, he owed $278.

We find no prejudicial error and the judgment is affirmed.

Mr. Justice GEORGE ROSE SMITH dissents.

GEORGE ROSE SMITH, J. (dissenting). I concede that a difficult question is presented, but I am inclined to think it should be decided the other way. The doctrine of ratification means that the agent and the third person must have entered into a contract that by its terms purported to be an agreement between the third person and the principal, needing only the principal's approval to make it a binding contract. As the Restatement, cited by the majority, put it: "A person purports to act an account of another if he undertakes to act on his behalf *and to make the other a party to the transaction.*" Another good state-

ment of the rule appears in *Minnich* v. *Darling*, 8 Ind. App. 539, 36 N. E. 173: ''The person who acts as agent must purport to be the agent of the principal, and the contract must be made upon the faith and credit of the principal. 'Ratification' means adoption of that which was done for and in the name of another. Hence, the contract, at its inception, must purport to be the contract of the principal. It is not sufficient to constitute ratification that the contract may have inured to the benefit of a person sought to be charged as principal.''

I do not think it can be said that when Fagan and Gregory concluded their first discussion they had purported to make a contract between Gregory and Fagan's neighbors. On the contrary, Fagan himself had made a contract with Gregory and had merely indicated a hope that the neighbors would share in the expense. The best indication that there was no initial contract between Gregory and the landowners is the admitted fact that it had not yet been decided on what basis the landowners were to contribute—whether by front footage, comparative values (the method later adopted), or some other arrangement.

Hence, I do not think this contract was subject to ratification. The further question then arises: Was Byars bound by his expression of assent at the neighborhood meeting, thereby creating a new contract of which Gregory is the beneficiary? The answer must be that Byars was not bound as to the work already done, as the consideration was entirely in the past. *McFarland* v. *Mathis*, 10 Ark. 560; Williston on Contracts, § 148. I agree, however, that the jury might find Byars liable for his share of the cost of the second coat of asphalt, on the theory that by his silence he acquiesced in and became a party to the agreement to do additional work in the future.