RINDEIKIS *v.* COFFMAN, TRUSTEE.

5-1964                                    329 S. W. 2d 550

Opinion delivered December 14, 1959.

*Holt, Park & Holt,* for appellant.

*Quinn Glover* and *Wayne Foster,* for appellee.

JIM JOHNSON, Associate Justice.    This is an adverse possession case concerning .68 acre located in the

SW¼ of the NW¼ of Section Twenty-Five (25), Township One (1) North, Range Thirteen (13) West in Pulaski County, Arkansas. In 1922 Bert M. Marsh, a witness for the appellant, bought the W½ of the W½ of the SE¼ of the same section. In 1922 Mr. Marsh had a surveyor run a dividing line between the SE¼ of the SW¼ of this NW¼ and the surveyor ran a line which, according to more recent surveys, encroached westwardly into the SW¼ of the NW¼ along most of its length. Mr. Marsh then built a fence more or less on this line and the fence has remained there to the present time. The fence encroaches onto the SW¼ of the NW¼ for a distance of about 45 feet, varying down to a distance of about 12 feet on the south end and merges, with the more recent surveys, on the north end. Mr. Marsh, or his family, remained in possession up to the fence from 1922 to 1945. From 1945 until 1949 the land involved was transferred to several owners, all of whom occupied up to the fence and treated the land as their own.

On July 14, 1949, the land was sold to William F. Thompson who entered into possession up to the fence also. In January 1953, Mr. Thompson and some adjacent property owners had a survey made running North and South between the SW¼ of the NW¼ and the SE¼ of the NW¼ of Section 25, and entered into a property agreement whereby they agreed to accept the new survey as the correct property line, notwithstanding the existence of any fences located elsewhere. After the agreement was made, Thompson did not move the fence bounding the west side of his property and remained in possession up to the fence. The appellants bought the property from Thompson on March 17, 1957, at which time the property line agreement was not of record.

The deed from Thompson to appellants conveyed only the W½ of the W½ of the SE¼ of the NW¼ of Section 25. Thompson was in California at the time he sold the land to the appellants and the real estate agent pointed out the fence as being the west line of the property. There is a barn situated partly on this disputed strip which belonged to Thompson and the sewage lat-

erals from his septic tank ended on the strip. Appellants brought this suit to quiet title in themselves to the strip involved. The Chancellor quieted title in the appellee and ordered appellants to remove the barn and sewage laterals to the extent they encroached on the .68 acre.

For reversal the appellants rely on: 1. their adverse possession; 2. the intention to hold adversely by their predecessors in possession; 3. the description of the property in the deed; and 4. the property line agreement being void.

Mr. Marsh made some statements on cross examination to the effect he only intended to claim to the true line. Appellee claims this keeps Mr. Marsh from claiming adversely under our cases holding if the intent of the disseisor is merely to hold to the true line, no adverse possession can arise. *Ogle* v. *Hodge,* 217 Ark. 913, 234 S. W. 2d 24; *Carter* v. *Roberson,* 214 Ark. 750, 217 S. W. 846; *Wilson* v. *Hunter,* 59 Ark. 626, 28 S. W. 419. In the case of *Rye* v. *Baumann,* 231 Ark. 278, 329 S. W. 2d 161, this Court had this question before it and it was there said:

"In arriving at the intent of the disseisor we think it is better to weigh the reasonable import of his conduct in the years preceding the litigation rather than rely on one remark made during the stress of cross examination (which is elsewhere refuted)."

Mr. Marsh was in possession and exercised dominion over the land involved for over twenty years and therefore obtained title to it by adverse possession under Ark. Stats. § 37-101.

Each deed that passed in appellants' chain of title did not contain a description of the .68 acre, so it might be argued that if Marsh obtained title, then the title remained in him on his failure to include the .68 acre in his deed, but, in *St. Louis S. W. Railway Co.* v. *Mulkey,* 100 Ark. 71, 139 S. W. 643, Ann. Cas. 1913 C, 1339, this Court said:

"While it is true that the land described in the deed to her does not include the strip in controversy, still her grantors, whose adverse possession had probably already ripened into title, intended it should, and thought it did, and at the time of the conveyance transferred to her the possession of it in fact, intending that she should have all the land within the enclosure."

All the predecessors in appelants' chain of title appear to have been in possession and exercised dominion over the land and did in fact transfer possession of it to each succeeding grantee. This places the legal title in Thompson, whose deposition states he knew where the new survey line was and did not intend to transfer the .68 acre to appellants. The question remains as to the effect of the property agreement entered into by Thompson and the apparent intention of Thompson not to include the .68 acre in his conveyance to appellants. As previously stated, Thompson entered into this agreement in January 1953. The agreement was made but no action was ever taken under it and it was not put of record until after this litigation arose and, therefore, appellants not having knowledge otherwise of the agreement are not prejudiced by it.[1]

As previously stated, a real estate agent sold the land for Thompson and appellant testified the agent pointed out the old fence row as the west line of the property. An agent has the authority to point out to a prospective purchaser what he reasonably believes to be the boundary. Restatement on Agency 2d, § 63.

In deciding whether Thompson intended to transfer the property involved to appellants, we think there are things other than Thompson's testimony to be taken into consideration in this case. For instance, it seems unreasonable that Thompson would intend to transfer

[1] Ark. Stats. § 16-115: "No deed, bond, or instrument of writing, for the conveyance of real estate, or by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof . . . unless such . . . instrument . . . shall be filed for record in the office of the clerk . . . of the county where such real estate may be situated."

part of the barn or only the major portion of the sewage laterals. Thompson also allowed appellants to go into possession and remain without disturbance for over a year. From the foregoing, we conclude that Thompson intended to, and did transfer the land involved to appellants.

The decree is therefore reversed and remanded for further proceedings consistent with this opinion.