Dan Portis *v.* Stuckey Brothers, Inc.

5-4092                                    411 S. W. 2d 301

Opinion delivered February 13, 1967

*Hale & Fogleman,* for appellant.

*Gardner & Steinsiek,* for appellee.

Conley Byrd, Justice. Involved in this dispute is the title to 13.33 acres of land which C. J. Stewart had acquired without color of title, by adverse pedal possession. Appellant, D. F. Portis, and appellee, Stuckey Brothers, Inc., both claim title to the disputed tract through the heirs at law of C. J. Stewart. The trial court found that Stuckey Brothers owned an undivided one-half interest in the disputed tract. Portis brings this appeal alleging that Stuckey Brothers holds whatever title it has subject to the rights and equities of Portis and that Stuckey Brothers' predecessors in title had previously mortgaged their undivided interest to Portis.

Appellant Portis raised two other points in his brief which have passed out of the picture by virtue of appellee's failure to cross-appeal and its concession on the points alleged.

The facts show that when the first U. S. Government Survey was made in 1845, there was meandered

out of Sec. 25, T-12-N, R-7-E in Poinsett County, Arkansas, an area known as Dismal Lake. In 1923 the Dismal Lake area was surveyed into lots and C. J. Stewart, who had earlier gone into possession for homestading purposes, received a patent in 1925 to Lots 5, 6, 7 and 8 of Sec. 25 and Lot 3 of Sec. 36, T-12-N, R-7-E, containing 141.62 acres. The testimony indicates that C. J. Stewart was in possession of the foregoing lands, together with the 13.33-acre tract, when the 1923 survey was made, under the theory that they all constituted a part of the homestead, and that after he was informed differently by the survey he continued to claim the 13.33 acres as part of his homestead. The witnesses refer to the 13.33-acre tract as "lost lands," sometimes as "strip lands," and sometimes as "meander lands." The northern boundary of the 13.33-acre disputed tract is 1,083 feet, the western boundary is 1,335 feet, and the triangle formed by the northern and western boundaries is closed on the south and east by the meander line of Dismal Lake. A portion of the 1923 survey which shows the original meander line of Dismal Lake in Sec. 25 and the lots laid out in Dismal Lake is copied below. The 13.33-acre disputed tract is indicated by dotted lines.

Prior to 1959, Florence Stewart Rosamond and Ora Marie Rosamond, two of C. J. Stewart's four surviving heirs, with their husbands executed mortgages to Portis on the lands described in the patent to Stewart. After Portis started foreclosure proceedings on the Rosamond mortgages according to the property description in the mortgages, the Rosamonds quitclaimed the 13.33-acre tract to Stuckey Brothers in return for extinguishment of $2,136.22 in obligations and $938.43 in cash. Shortly after the quitclaim deed to Stuckey Brothers, Portis, without making the Stuckeys a party to the foreclosure proceedings, amended his complaints to describe Lot 6 as follows:

"... Lot Six (6), with accretions, more particularly described as: Beginning at the intersection of the meander line and the half-section line and running West 990 feet to a dirt road; thence South along said dirt road to the quarter-quarter section line; thence East along the quarter-quarter section line to the half-section line; thence North along the half-section line to the point of beginning proper, and containing 27.94 acres, more or less;..."

Portis purchased the undivided interest of the Rosamonds at the subsequent foreclosure sales. He also acquired from the other two heirs of C. J. Stewart deeds to their undivided interests which included a metes and bounds description of the disputed lands.

Stuckey Brothers initiated the present litigation, claiming that it was the owner of the disputed tract. It asked for an injunction to prevent Portis and his lessee from trespassing upon the lands and for an accounting of rents for the years 1959-1962. Portis denied Stuckey Brothers' title and counter-claimed to have the title quieted in him.

Appellant Portis argues that Stuckey Brothers not only recognized and acquiesced in the boundary between it and the C. J. Stewart lands, but that they knew or

should have known of Portis's claim at the time the quitclaim deed was executed. Portis argues that even the quitclaim "protesteth too much" because the description closes with the statement, "said land not being any part of Lot No. 6, which lies South and East of said meander line." In this connection Portis cites *Miller* v. *Fraley and Greenwood & Co.,* 23 Ark. 735 (1861), where we said:

"We have been able to find no case in which it has been adjudged, nor is it asserted in the text books that the purchaser must hold under a general warranty deed to entitle him to protection; but it is no doubt the law that where a person bargains for and takes a mere quit claim deed, or deed without warranty, it is a circumstance, if unexplained, to show that he had notice of imperfections in the vendor's title, and only purchased such interest as the vendor might have in the property, and that he is not entitled to protection in equity as an innocent purchaser without notice, etc. *Oliver, et al* v. *Piatt,* 3 *How. U. S. R.* 410; 2 *Hare & Wal. Notes Lead. Ca. Eq.* 69."

From the foregoing authority, it would follow that if Stuckey's vendors had good title to the disputed tract as against the mortgages executed to Portis, then it will be unnecessary for us to determine whether Stuckey Brothers is entitled to protection as an innocent purchaser without notice.

Appellant characterizes this litigation as a boundary dispute and asserts that by the actions of C. J. Stewart and his widow and children, and the acquiescence of the adjoining owners—Stuckeys among them—the disputed area must be considered as being within the boundaries of Lots 5, 6, 7 and 8 of Sec. 25 regardless of whether an actual survey would place it within the boundaries of these tracts as they are delineated by the government surveys.

In *Rindeikis* v. *Coffman*, 231 Ark. 422, 329 S. W. 2d 550 (1959), we had before us a deed from a grantor which conveyed by the government land calls, and a subsequent deed to a different party conveying 0.68 acres which the same grantor had acquired by adverse possession. We there held that whether the portion acquired by adverse possession passed to the grantee of the government land calls depended upon the intent of the grantor.

Upon the issue of whether the disputed tract was intended to be included in the description of Lot 6, the tetsimony of William T. Rosamond, Mrs. Florence Stewart Rosamond, Mrs. Ora Marie Rosamond, and Arthur Rosamond is that they never intended to mortgage anything but the "deeded lands" and that they definitely did not intend to mortgage the disputed tract which they refer to as "strip lands." Opposed to the testimony of the Rosamonds is that of Mr. Portis that the Rosamonds intended to mortgage all of the lands owned by them; that he had a conversation with Arthur Rosamond about the deed after it was executed; and that Arthur stated that he thought he had mortgaged it all to Portis until he was advised differently by Mr. Stuckey. Mr. Rosamond denied any conversation with Mr. Portis concerning the quitclaim deed to Stuckey.

The supervisor for the Farmers Home Administration, which had received a mortgage from the Rosamonds containing the identical description used in the Portis mortgages, testified that Arthur Rosamond told him the whole 160 acres would be mortgaged. This mortgage, however, was prepared by the Farmers Home Administration from a land description obtained in the court house.

While it is true that Mr. Portis had to get a Writ of Assistance to obtain possession from the Rosamonds after the foreclosure of his mortgages, we can not say that the chancellor's finding in favor of Stuckey Brothers is contrary to a preponderance of the evidence. The

chancellor was entitled to take into consideration the size of the tract, which is considerably larger than the inconsequential addition usual in boundary disputes.

We agree with appellant that the portion of the decree quieting title to that part of the NE¼ SW¼ Sec. 25 that lies immediately north of the disputed tract was not an issue in the litigation and that it was erroneously included in the decree.

Therefore, the decree is affirmed in so far as it quiets title to the 13.33-acre disputed tract, and is reversed and remanded with respect to the strip of land immediately north thereof in the NE¼, SW¼, Sec. 25. Each party shall bear his own costs.

FOGLEMAN, J., disqualified and not participating.

JONES, J., not participating.

HARRIS, C. J., dissents to the affirmance.